Ladies and gentlemen, before we begin our first case for this morning, I want to take just a moment to welcome our newest colleague to the Court of Appeals for the Seventh Circuit, Judge Barrett. So we look forward to many, many, many, many years of Judge Barrett's contributions here. So our first case for today is Hoffman against Knoebel and others. And we are ready to hear from Mr. Sorgel. And I'll note we have a new time system. When you get to the point on the countdown clock where you've reached the rebuttal time you've reserved, it is up to you to stop and save your rebuttal time. Brennan Sorgel Good morning. May it please the Court, my name is Brennan Sorgel and I represent the 18 plaintiff appellants who participated in the now defunct Clark County, Indiana Drug Treatment Court program. This is an appeal from a summary judgment order that disallowed my 18 clients from arguing to a jury that their constitutional rights were violated. The nature of this case concerns the indefinite incarcerations of drug court participants absent any due process in the jail as a sanction for violating a drug court rule. These sanctions to jail lasted anywhere from 6 to 220 days at a time. The district court accurately described these sanctions as at best unpredictable and almost always unknown. It was a wholly indefensible system. Unfortunately, it was a defensible system for my clients because the appellee's defendant successfully argued at the district court level that all fault was on one man, Judge Jerome Jacoby. These forgotten souls of our society deserve and need these fundamental constitutional protections we're talking about in this case, your honors. So, what exactly, maybe it would be helpful if you were to take the defendants by group because we have the sheriff, for example, who has one set of powers and responsibilities and perhaps another set of obligations. We've got the chief probation officer and bailiff. So, you know, let's take the sheriff for instance. What was the sheriff supposed to do in the judicial order to put somebody in jail? Once the judicial order came for a sanction, pending placement in jail, the sheriff as in charge of the Indiana jails was responsible for the legality of their custody. The sheriff was the one that had to make sure that they had a initial hearing where all their due process rights were protected. And the sheriff abdicated that responsibility by passing off all responsibility to the court system to make sure that these individuals had any semblance of a due process hearing before their liberty was taken away for the sanction. So, should he have filed, say, a motion to reconsider or was there any appellate possibility to go beyond what Judge Jacoby was doing? I'm trying to make this concrete in my mind. Right. If the sheriff could have done anything, what we have argued in our briefs is that he, first off, should have had some reliable means of communication between the inmates in the jail and the court system. Because what happened in this case is, for the two plaintiffs that were incarcerated for longest, Ms. Hoffman and Mr. O'Connor, they were only released because, at happenstance, a jail officer decided to take a piece of in-house mail to another judge in the Clark County judicial system that told them, hey, I've been sitting here for, you know, 200 days now. What is going on with my case? And so that was the jail's fundamental failing, was not having an adequate system of communication between the jail and the court system. Counsel, what about the Tiger system? My client's testimony throughout all of their depositions was that they had absolutely no idea what the Tiger system was. The only method they knew as to communicate their plights to anyone outside of the jail was through in-house mail. I'm aware of the affidavit they've submitted saying that there's this Tiger system and that there's one correction officer, Mr. Dodd, who's in charge of sending grievances from the jail to the court system. But the bottom line is, in the practical sense, the only system my clients knew about was in-house mail, and that did not work. Counsel, do you think a grievance system is constitutionally required? I do believe a grievance system is constitutionally required. On what basis? The court's case law in, I believe, Armstrong v. Guanrido held that an Indiana jail had a constitutionally inadequate system of letting the inmates communicate with the courts. Well, the problem in Armstrong was that for Mr. Armstrong, there was never any court order to detain him, right? Correct. For all 18 of your clients, there were court orders, correct? Correct. And I have to say, this case looks a lot more like what we dealt with in Hernandez v. Sheehan, where we expressly rejected this notion that jail correctional staff have an obligation to communicate between inmates and the courts about the legality of custody. If you could address the Hernandez case, I would appreciate it. I'm not able to address the Hernandez case, Your Honor. I apologize for that and I'd be willing to submit a letter after this oral argument to address that. But my response to your question would be, similar to Armstrong in this case, the issue is these people never had an initial hearing. But that's not quite right, of course. I mean, they're arrested for the various underlying offenses, the drug offenses. There is an arraignment, there's some sort of initial hearing. At that point, they get diverted into this alternative system, which is a kind of system in general that many jurisdictions around the United States are experimenting with. And they sign this agreement and I don't really want to get into the agreement because I think the district court judge was prudent not to rely too much on it. But in any event, they've been arraigned. And so now, they're on this form of almost like supervised release. They're on a type of release that is designed to rehabilitate them if it works. So I don't see this as detention without any process. It's just detention. The best I can come up with for you is without the ability to continue to monitor whether the process is going forward properly. So they find themselves in jail. But as I understand it, none of them spend any more time in the jail than they would have if they'd actually been convicted. We just don't have a conviction here. Correct. The criminal charge that led them into the drug court is one thing. But then once they're in this quasi parole probation type of system and a sanction comes up where their liberty interest is threatened, there has to be some kind of due process hearing at that point. I don't think anybody really disagrees with that, counsel. And I'll be surprised if you hear much defense for Judge Jacobi's system. The problem is in allocating responsibility to individuals where your clients want damages from individuals. And we've talked already a little bit about the sheriff and what his responsibilities are. If we talk, is it Knoebel, Kniebel? Knoebel. Knoebel, okay. If we talk about Knoebel and Sebold, we've got this staffing committee with two judges and three or four lawyers, all of whom are saying this is basically fine. What are probation officers supposed to do? Well, the lawyers that were supposed to be there were not there. So at the end of the day, it was just these... Not physically there or just not doing what they were supposed to do? Physically not present, which is what all this started about. Because there's not a defense attorney at these sanction hearings. So if there's no defense attorney, these people didn't think they had the right to counsel. They didn't have... They didn't, at least under our law, somebody who's facing, for example, a parole revocation or a supervised release revocation does not necessarily have a Sixth Amendment right to counsel. I don't know about the details of that. Indiana actually has a statute related to problem-solving courts, and the statute is 332316-14, which states that if a drug court participant is alleged to have violated any condition of the program, Judge Jacoby, as the drug court judge, could remand him into custody. And once that allegation is made that they have violated the drug court rules, the judge shall conduct a hearing concerning the alleged violation of a condition with the following restrictions in place. Proof of the violation by a preponderance of the evidence. Presentment of evidence at open court. Entitlement of the participant to written notice of the violation, disclosure of the evidence, to confront and cross-examine witnesses, and to be represented by counsel. What was the statute again? It was IC33-23-16-14.5. Thank you. Counsel, can I ask you about the claims against Sable and Knoebel? What exactly do you allege the nature of the due process violation to be? I mean, is your central claim really this failure to report Judge Jacoby? Yes. So your central claim, because it seems to me you have a few things, and I just want to isolate exactly what it is you're talking about. So that is your central claim and your most important claim? I would say so because it's the one that happened to every drug court participant that was sanctioned to jail. And that is clearly they weren't given procedural due process before they were sanctioned to jail. But once that order comes from Judge Jacoby and he says you're sanctioned to jail pending placement, it became Josh Sable's job and Susan Knoebel's job to find placement. And we submitted in our briefs what exactly they did to find placement. Now that's a different claim. It seems to me that that claim is that they violated the due process rights of your clients because they didn't diligently pursue placements. That's a different claim than the claim that they failed to report the judge or supervise the judge. Is it right? Correct. And I would say that the claim about failing to report over and above Judge Jacoby was alleged because that's what ultimately led to this stopping. This would be going on today if Josh Sable did not walk to Judge Carmichael's office, who is the chief judge of the circuit court in Clark County, and say, hey, we've been sanctioning people to jail without any due process. What is going on? But the fact that he did it then doesn't mean that he had a constitutional duty to report earlier. And the district judge also said that below these arguments hadn't been fully developed about what Knoebel and Sable should have done in terms of finding placement or arguments about their participation in the DTC process in the first place. Are you changing your argument now? I'm not. I'm not changing the argument. And if I didn't fully address it at the district court level, I didn't fully address it. But I thought I did. The bottom line is there's not a whole lot of case law concerning drug courts and the due process rights to go on with drug courts. So my main argument was to cite a case from the Eastern District of Michigan where a drug court case manager was found to have violated their constitutional rights to freedom of religion. And that just wasn't enough to get over the fact, according to Judge Barker, that this wasn't clearly established that these two drug court case managers had an affirmative duty to go above and beyond Judge Kobe. So I want to pursue this a little bit, too, because when you get to Knoebel and Sable, and I don't see much in this case at this point about that. But, you know, we want to see what it is they should have done that they didn't do. And I guess you've put on the table that they were very non-diligent about trying to find placements. Perhaps they should have been exploring options other than just tossing these people in jail, whether it's some sort of electronic monitoring or what have you. But anyway, that non-diligence, I gather that there were also claims that paperwork wasn't being done in a proper way and at a proper time that would have allowed the system to work a little bit better. But I would like to know exactly what it is they didn't do that they should have done. And I also want you to talk a little bit more about what you just now touched on, which is why this is so Sebald, Knoebel, and Rodin for that matter. On these due process claims, we're not talking about the false arrest claims right now. I'll put that to one side. Okay. For the claims against defendants Knoebel and Sebald. And are you dropping Snelling? I am for those, the fifth amendment due process claims, not for the arrests. Okay. And why are you talking about the fifth amendment since this is the state instead of the 14th? The fifth amendment is applied by the 14th amendment to the states. I don't understand. The 14th amendment itself has a due process clause. Right. So why do we need an extra due process? Right. I don't get that. I'm mistaken on that point. I'm sorry. All right. But anyway, so you can tell me what failure of action within their power and authority was so egregious and so well established that we should find a 14th, a due process violation. I presume procedural due process, not substantive. I would argue that it would be substantive due process because you cannot confine people to jail without the authority to do so. That's liberty without due process of law. Correct. That's procedural due process. You don't need substantive due process here for anything. No. It's not going to help you. It's only going to complicate things. So focus on, if you could, on Chief Judge Wood's question about what clearly established law shows that Knoebel and Sebald were violating constitutional rights. Just the fact that you cannot jail people without any authority to do so without a due process you cannot. I'm sorry. A court ordered they be held in custody. And you see, the elephant in the room here is, as you started out by admitting, judicial immunity. After the Supreme Court's decision and stomp against Sparkman, it's entirely clear that judges can be doing some pretty awful things and still enjoy judicial immunity. So we don't have to admire what Judge Jacobi was doing, but he was doing it wearing a black robe, more or less. He was doing it as a judge and he may have been making many mistakes, but the rest of these people are following his orders, right? I would say that would be correct up to an extent. So once Judge Jacobi entered the order holding these people in jail pending placement, pending treatment at a job-defined placement. And our theory is they didn't do that. And then secondly, for two participants, the individuals that were detained for the longest amount of times, the testimony was that Susan Knoebel took those two individuals' files from the case manager and informed the judiciary that she was going to file a petition to terminate, which would have caused a due process hearing to happen, but did not. And then the petition to terminate would have tossed her right back into the regular criminal justice system, I take it? Correct. Yeah. What is the evidence that they took inadequate measures to try to find placements? What I saw was that they were only making one phone call a week. I mean, is there any evidence that there were beds available and Knoebel and Siebold failed to secure them? There was testimony from a couple of plaintiffs that were incarcerated in jail that the only reason they were able to get out of jail was because their family or their friends placed a phone call to some other treatment facility that Mr. Siebold did not call. For instance, we had a pregnant participant that was confined in jail that needed to go to a hospital. Mr. Siebold was having a hard time finding a hospital that also served as a treatment facility, I take it. And she was only released as her mother arranged with the hospital and then coordinated with Mr. Siebold that, hey, there's a bed available at such and such hospital. And then the next day, she's out of jail. But is there evidence that he wasn't calling? I mean, maybe he missed a hospital. I mean, I know that there are those allegations in the record. Maybe he missed a hospital or missed a bed. But is there allegations that he was really doing nothing? The evidence we have, the evidence we presented to the district court was his case manager notes, which are basically just his weekly summaries of what he's done for each individual participant. And we tried to put those notes in front of this court to show that maybe he made a phone call once a week. Maybe he made a phone call once every two weeks. It just wasn't enough effort to get these people out of jail if they're waiting solely on his efforts to get placement out of jail. So that would be our theory. Can I ask you for a minute, because you're running down to where you wanted to have rebuttal time, about the false arrests. The primary argument that I understand your opponents to be making is that even if the federal fourth amendment violation here, and I'd like you to explain that. The district court cited a case, I'm not sure how you pronounce it, Passowitz v. Lake Forest Preserve, where a forest preserve officer made an arrest outside of his jurisdiction. And the court in that case held that that forest preserve officer, although he violated state law in making the extraterritorial seizure, did not violate federal law. But in making that, in the court's reasoning, they said that the present case, the forest preserve officer, might be viewed differently if the arresting officer lacked jurisdiction and they were specifically informed that they could not arrest people. And it's your contention that that would clearly establish that violating state law and making an arrest violated the fourth amendment? Not only that, but the fact that Judge Jacobi informed these two people, Mr. Snelling and Ms. Noble, that he did not want them arresting people. The fact that their own policy and procedure manual specifically said they did not have the authority to arrest people, nor could they even transport them back to jail. Their own policy and procedural manual said that. Is there any doubt about the validity of the arrest warrants for these three plaintiffs? No. So how were they hurt by having these people arrest them? The harm to my clients would be the fact that these people, Ms. Noble and Mr. Snelling, are not following the laws. How were your clients hurt? They had valid arrest warrants against them and they wound up in custody? That would be an argument I would have to make to a jury. Well, why don't you make it to me and to my colleagues? This is a society of laws and so our theory would be that I can't go out and arrest a Chicago taxi driver because he's speeding. Why should these people pay money to your clients who had valid arrest warrants issued against them and who were then taken into custody, apparently without any violence or physical injury? Because of the injury to their human dignity for being arrested by someone that had had that arrest warrant, an arrest would have been in order. Yes. Okay. If I can save my time. You are welcome to save your time. Thank you. Thank you. All right. We have three appellees, so I welcome whoever wishes to go first. All right. Are you Mr. Smith? Yes, Your Honor. May it please the court. My name is Joseph Smith and I represent Josh Seibold in this appeal. As the court is aware, the defendants are splitting their time today. I'll be addressing the personal involvement issues that the district court based its decision on, as well as qualified and judicial immunity, time permitting. Ms. Borick, who represents Susan Knoebel and Jeremy Snelling, may have some additional comments on these issues and will also address the Fourth Amendment issues. The issues as they relate to Sheriff Rodden are distinct from the issues for the other defendants and Jeff Lowe will be discussing those issues. The district court was 100% correct that the drug court staff members were not personally involved in any constitutional violations that may have been suffered by the plaintiffs in this case. So here's what worries me about your theory. It's very commonplace for somebody to be in a jail or, for that matter, in a prison pursuant to some kind of court order. And yet it's also entirely possible to bring, for instance, a writ of habeas corpus against the custodian and say, you know, you're keeping me too long or you're keeping me under conditions that, you know, you've punished me for something that I too long, longer than I thought. So the fact that underlying the custody is some sort of valid court order in no way prevents either a conditions of confinement case or a duration of confinement case. So why is your case different in principle? The difference is who the case would be brought against. In a habeas case, it would be brought against the state for release of the incarcerated person. Well, and so these plaintiffs, I know it's your client, they did, in fact, bring the suit against the sheriff, you know, challenging the authority to keep them in custody in the way that the judge was. As far as your client is concerned, it's a duration of confinement claim. The judge didn't, and the whole program doesn't assume you're just going to put people in jail. If you're just going to put people in jail, you might as well just have the criminal proceeding and be done with it, which would at least give due process protections. And your client, that the allegation is, by failing to explore outside placements, as was his duty, kept them confined too long. Well, it is absolutely false that Josh did not placement for these plaintiffs. But that's a factual matter beyond where we are in this case right now. I'm sure that that would be a defense that you would bring, but there clearly are facts that are under dispute about how diligent he was. If it was every two weeks and one desultory phone call and no follow-up, and we have evidence in the record that family members were finding placements where he wasn't, I mean, that's a dispute, right? No, I don't believe there is a dispute there, Your Honor. So you think, suppose he had made one phone call a month. Would that be enough to fulfill his responsibilities? That is a very interesting question, a question that has not been answered by any court in this country, as far as I can tell. What due process protections apply in these drug courts that are relatively new? So is it your position that the answer is none? No, there is definitely some due process protection. So what does it extend to? Due process, if you think of even a general framework, such as Matthews against Eldridge, looks at the interest that's at stake, looks at the value of more procedures, looks at the cost of more procedures, looks at the public interest. What do you think is required? Let's not lose sight of what the actual alleged constitutional injury is here. Well, the constitutional injury is that they were detained too long without being told why they're being detained, without having an opportunity to contest the alleged reason. I assume that drug court personnel are no more infallible than anybody else in the human race, so it could be that there are things that these plaintiffs might have wanted to say if somebody had allowed them to do so. And those are procedural problems that absolutely were present in this case, but those were procedural problems that Judge Jacobi was responsible for. Judge Jacobi set the policies for the court, set the procedures for the court. No, but I'm saying, I mean, I know that he's the source of the original confinement, but we're a week, a month, 254 days, so there are more, so we're focusing on a more micro level, the procedures that are going on inside this county jail and the lack of an opportunity for the drug court participants, the diversionary program participants, to get a decision about whether the duration of their confinement is valid or not. They had that right through a habeas petition, which none of the plaintiffs in this case sought. So you think they could have filed for habeas? Was there any, is there any appeal in the Indiana system from decisions of the drug court judge? I don't know the answer to that question, Your Honor. That seems to be an important issue. Correct. This would be, if he's just sort of his own les tassez-moi, that's a little troubling. There would be, certainly there would be some right to appeal from a petition to terminate. However, the intermediate sanctions, which are designed to be short-term, although they didn't end up being that way because of the way Judge Jacoby wrote his orders, whether there's an interlock... Those orders are unbelievable. I looked at several of them. They're really hardly, you know, it's just like handwritten, this is Destiny Hoffman, no bond, need to be held pending drug court staffing, need to be held until further order from the court. I mean, this is, this is zero information. Right, Your Honor is very correct to be concerned about the way that orders, but these were Judge Jacoby's decisions in Judge Jacoby's court that Judge Jacoby had ultimate authority. Mr. Smith, I'd like to follow up on that theory a little bit because, I mean, obviously court staff are expected to follow court orders, but I wonder if you would agree that there are any limits to that. Imagine, for example, a judge who orders a court reporter to fabricate a transcript, or maybe a little more far-fetched, but a judge who orders that a detainee who's been contemptuous be whipped. Would a court staffer have immunity for complying with those directions from a judge? A court staffer would have immunity for complying with those Absolute immunity, Your Honor. Unless the Seventh Circuit is going to say that judicial immunity is not absolute, then the court staff member would be protected from monetary damages in that case. This goes well beyond anything Stumpp v. Sparkman ever said. Even Stumpp had limits on actions beyond the judge's jurisdiction. There's a, correct, outside the judge's jurisdiction. You think a judge has corporal punishment? Maybe the judge should just order his execution. You're kind of a pain in the neck, so we're going to have you executed. Surely you don't want to go on judicial immunity for that. That would be a due process issue. Clearly there would be a violation of a person's due process rights for that. And so what Judge Hamilton is focusing on is forget the judge. Even in the military, I would say, there are limits to the quote following orders defense, and I think that's really where Judge Hamilton's questions are going. And I'd like to ask a question about orders. Actually, I mean, it seems to me that part of your defense of Knobel and Sable is that they didn't have the authority to release. And I want to know about the mechanics then. You're saying that they weren't the custodians essentially, and I want to about the mechanics of when they found placement, because there are notes in Josh Sable's notes saying JS prepared order for transport, for example. Is that something he drafted for Judge Jacobi's signature? What were the mechanics when he found placement? Did he then sign an order, bring an order to the sheriff that released the person? Because then that does seem like he had some control. No, Josh would prepare an order for the court. That Judge Jacobi would then sign. Correct, that the judge would sign, and then I believe Josh would take the order to the sheriff. Okay, so it's just drafting when his notes say that. Correct, which is the same thing that Judge Barker granted summary judgment for Defendant Newton, the court clerk. She was accused of doing the same thing, but she had immunity because she was drafting the order. So, I hope I answered your question, but I see... I'd also like you to answer mine. Okay. About the limits of the following orders defense or immunity. Do you really think there's no limit? There has to be some limit, obviously. What is it? If the limit... I can't answer that. Don't worry about time. I mean, I will make sure that everybody's time is balanced. The limit to judicial immunity hasn't been set. I have not seen a case where someone was ordered to execute someone at the direction of a judge. So, I can't say what the limit is, but the limit certainly isn't within this case because Josh was not ordered to whip anyone. Josh was not ordered to execute anyone. Josh was not ordered to torture anyone. He was directed to find a place for these people to find treatment. And he didn't do it, you know, according to the allegations. That's the problem. But he did do it according to the record. The record is clear that Josh was doing exactly what he was supposed to do. He was communicating with the treatment providers trying to find a place for these... and finding is misleading. That's not what happened. What happened... I'm sorry. Do you believe the federal constitution is what imposed duty on Mr. Siebold? Or was it essentially just a management obligation imposed by his duties for the court? Management obligation imposed by his duties to the court. So, really, the drug court program was a fraud. You know, you could, in fact, just be put in jail indefinitely. And if they decided to find you a placement, that's great. And if they didn't, you would just stay in jail as opposed to receiving the treatment and the rest that the program ostensibly promised. No, I disagree, Your Honor. The way that these pending placement orders worked was the judge would order, based upon recommendation of the treatment team, the staffing committee, to have the participant placed in a specific facility. So Josh's responsibility when the judge ordered this person sent to a specific facility was to call that facility and see about getting them in or at least getting them on the waiting list, which is exactly what Josh was doing. And if he had trouble, he went back to the team and said, I can't get this person in. Specifically, I believe Nathan Clifford is one circumstance that is in the record where he went to the treatment team and said, they're on the waiting list, but they're telling me that they have no idea when the bed's going to be open. So he stays in jail for 93 days. So he asked the judge, what am I supposed to do? The judge says, put him in this other facility. And he calls out of the facility and gets him in immediately. The big problem is that this is all being done without any participation on Mr. Clifford's part. But I think, you know, I'll, maybe we'll leave it here. We certainly have your point that, in your view, Mr. Siebold's doing what he should be doing. So thank you very much. We'll move on to the next argument. Thank you, Your Honor. Ms. Borick. Good morning. May it please the Court? I'm to address the due process issues as they pertain to Ms. Knoebel, my client, and if time permits, the Fourth Amendment issues concerning Ms. Knoebel and Mr. Snelling. So actually, can I just invert that for a minute? Because I am concerned about the action of arresting without authority to do so. Because, you know, in a society that follows the rule of law, having a police, having somebody arrest you with the authority of the state behind you is a major thing. Under your theory, if I just decided to send my law clerks out and arrest somebody, and they happened to find someone for whom there was also a valid arrest warrant, that would be fine? I think, in this case, I don't think we even would need to reach that question because... Well, but could you answer that? Because these people knew that they had no freestanding arrest authority. This wasn't inside the courtroom, right? It wasn't inside the building. There's no freestanding arrest authority. Right. I think the district court's decision in the Hendrick case, which involved another drug court participant, where I think this would be a very close question under Fourth Amendment law versus as far as, on one hand, following the judge's instruction, and on the other hand, these individuals acknowledging that they did not have arrest powers outside... But the judge didn't tell them... As I understand it, he said, I need them here. But he wasn't saying, and don't go to the local police. For all the judge knew, I'm willing to believe, when he says, you need to get these people back in, he means follow the correct procedures to get them back in. So I don't think on this one, you can rely on anything the judge said. They just went out there with no basis, in fact, armed and arrested and transported people. Knoebel apparently impersonated a police officer, said, alleged that she was a police officer. This is a troublesome scenario for me. I don't believe the record is that Ms. Knoebel specifically impersonated a police officer. The two, Mr. Snelly and Ms. Knoebel did go to the locations and had their badges. But as far as impersonating a police officer, I don't think the record indicates that. The court, there is instruction that the court said, find a way. And then there is evidence also in the record that the judge did make an inquiry to the, I believe, the Indiana Judicial Center or the Attorney General's Office as to their practice of finding these people. And I think what this case comes back to is the qualified immunity. In their reply brief, they conceded that there were no, that there were no cases on point and that would have informed Ms. Knoebel and Mr. Snelly that this was a Fourth Amendment violation. I'm not sure that's right about the diversionary drugs, drug courts, and so on. But as far as arrests, there have been laws for years about who's entitled to arrest somebody. There have been laws, but there have not been Fourth Amendment cases that have said that someone who is a court employee is not a citizen just going out there and making arrests. That someone who says, you know, stop police, you know, we're arresting you. So what the district court says, Knoebel and Snelly arrived at the locations in unmarked county-owned cruiser wearing badges and carrying Right. But the district court also says that there is no Fourth Amendment jurisprudence that would tell them that what they did violated the plaintiff's Fourth Amendment rights in this case. And as far as, these folks were subject to going to jail at any time. There were active arrest warrants out for them. So we don't really have to worry. As long as there's an active arrest warrant and anybody who wants to pick you up and bring you in, you have no interest in how you actually got in. That's your position. It's a little bit like Utah against Streif. Yeah. I mean, I think in this particular case, I mean, the result would have been the same. I mean, they would have gone to two jails instead of one because they were picked up in a neighboring county. But there is no case law that would have put Knoebel and Snelly on notice that they had violated the Fourth Amendment. Was it reasonable for these individuals to be taken into custody? Counsel, I'd like to ask you about her failure to file the terminate. Why wasn't that a violation of their due process rights? I think that claim, as the district court found, they wasn't developed in terms of argument and was waived. But even aside from waiver, that is a function of the court, a judicial function for which there would be of Ms. Knoebel or why she did what she did. This is a function of the court. This drug treatment court has a procedure and sanctions and rules and for someone who doesn't participate successfully, eventually a petition to terminate. So she gets the quasi-judicial immunity even if she acts, say, contrary to what the judge wanted her to do and lies to the judge about whether she's done it? I don't think the record reflects that she lied to the judge. The judge Jacoby's testimony that they cite said he looked at some scheduling orders, I believe were his words, and there was that there's no evidence in the record that she was asked, have you done this? Yes, I have. And said, yes, I have, when she in fact had not. But I think as part of the functioning, this is very absolute immunity in terms of functioning within the court process. This is part of the drug court function, which is a unique type of court, not a typical court. This is part of the court, filing petitions to terminate. And I think this would be something that would, this would fall under judicial immunity regardless of why the petition was not filed. So the trouble with this judicial immunity argument is that the usual way in which judicial immunity works is within the context of a judicial process where we have notice and an opportunity to be heard and the defendant knows what's going on. You seem to think judicial immunity also applies when, you know, the judge just says, you know, put somebody in the black hole of Calcutta, you know, for, you know, a year because I'm just tired of dealing with these drug court folks. That'll teach them. And you would say if the judge said that or if the judicial personnel such as Knoebel do that, that that's any remedy. Well, I think that's separate from the petition, from the petition to terminate. The reason, the problem is we don't have a petition to terminate. We wouldn't be here if we had a petition to terminate because Indiana law has all sorts of, as we just heard, protections for somebody going through that process. It's the limbo process that we're being asked to before you can be returned to jail. Some, you know, in some instances that I can think of, you know, even if there's no placement, you have a right to come back, you personally, into the court every week or every two weeks to get an update on your status. All of these, everything that's happening here is happening outside the knowledge of these poor people who are sitting there languishing in jail because Indiana decided not to tell them. And then I think that that goes back to the argument about that part is the judge's responsibility in terms of how this procedure works. What if the sheriff had adopted or the case workers had adopted a practice in these weekly meetings of saying, oh, it's been a week since or two weeks since we were told to find a placement for, you know, Ms. Hoffman, let's say, we haven't found one yet, so we're going to bring Ms. Hoffman into court personally so that she's told the reason you're still in jail is because we can't find a placement for you. Maybe she can engage a lawyer to help her. Maybe she can get a family member to help her. At least it puts her fate back in her own hands within the context of the system. And I believe that would, that would definitely be the more constitutionally sound way to run the system. But as far as where our clients are responsible for having that procedure, that Judge Jacobi or the other presiding judges did not believe that due process required that level of procedure. Well, I understand Judge Jacobi didn't think due process had anything to do with this, with this somewhat bizarre expression. I don't know why there's a problem with the dog wagging the tail rather than the other way around. But there are other people with responsibilities in the system, and I was deliberately saying at these meetings, if the caseworker said, we want to bring in Ms. X, I don't see that Judge Jacobi was saying yes, no, or maybe about that. That was within the power of the people who were working in the system, and they did not in any way take steps that would have provided the notice and opportunity to be heard that are really the basic building blocks of due process. And I think that goes to, are they constitutionally responsible for knowing that due process requires these people to be heard? Notice and an opportunity to be heard? How well established is that? But as, as far as non-lawyers knowing that a procedure in court is, does, does or does not comport with due process, the record is replete with debates among the lawyers involved in the drug treatment court. Do we, are we doing enough for due process? Judge Jacobi says, as Your Honor noted, it was his interesting phrase, yes we are, and I don't think the non-lawyer staff members were in a position to say, wait a minute, due process requires you bring them in every two weeks. We've been taking too long for Ms. Hoffman. We need you, we need you to come in. Okay. Thank you. All right, thank you. Mr. Lowe. Jeff Lowe here on behalf of both Danny Rodman and Henry Ford. Henry Ford is not a name you've heard today. He was in the original notice of appeal as somebody they were going to appeal the grant in summary judgment two. There was no briefing in regards to Mr. Ford, so they waived any claim with regard to Mr. Ford. With regard to Mr. Rodden, Mr. Rodden was granted, sued in both his individual and in, individual and official capacities. The individual capacity claim was waived at summary judgment stage. They've not appealed it here. We're only dealing with whether Sheriff Rodden can be responsible in his official capacity. So, so I want to think about that because part of running a jail, surely, is, is making sure that the inmates, you know, get to their court hearings, that the, that you're, you're not keeping somebody longer than you're authorized to keep them. There, there are a lot of things that are duties that arise after that original judicial order putting you in. And that's why I'm not sure that this, oh, we're just doing whatever Judge Jacobi said idea is a complete answer to the problems here. Okay. If I may, the first point I'd like to make to that, Your Honor, is that there is no evidence in the record that any of these plaintiffs, any of these 18 plaintiffs, were held one day longer than they were ordered to be held by the court. This wasn't a situation where... Well, it's only because they were open-ended orders. I understand, but this is... So they could have been held for 10 years on that theory and it all would have been fine. No, it wouldn't have been fine because then it would have been an obligation for the court to do something about it. The, I'm not saying, and where our position is not, that any of these detentions were, were that what Judge Jacobi did was correct. But what we're saying is that Judge, or excuse me, Sheriff Rodden had nothing, could not do anything about the... All he could have... Well, go ahead. I was just gonna ask, you know, Chief Judge Wood mentioned that some of were open-ended, but not all of them were. Some of the ones where the detainees were held pending staffing gave actually the date of the staffing conference. Correct. And then Judge Jacobi would not always conclude that such a person should be released after that staffing conference was held. But when that order said pending staffing and gave the date of the staffing conference, did that place some obligation on the Sheriff to check? I think if you'll see from the record, and it's, I think we've established a pretty clear record in this case, that whenever they were held pending a staffing meeting, there was another order that occurred on the date that staffing meeting was held that said either hold until the next staffing meeting or hold pending placement or hold pending further order of the court. So I do think that there was a subsequent, there is a, there are a multitude of orders that say hold these people until this time. Well, actually a lot of them, I'm looking at three sample orders, I mean three orders from the record. One of them is a pending staffing order on 5-2-13, no follow-up really, because the same person is then held until further order from the court. Same language with a different defendant, Joshua Foley, D to be held until further order from the court, with no outer limit at all on further order from the court. But the problem we get into there is exactly what Judge Hamilton was talking about earlier, which is with Hernandez and Sheehan. What you're asking Rodden to do, if you're asking him to evaluate those orders and determine whether they're proper or whether he has to get somebody out, is you're requiring an executive officer to evaluate the orders of the judiciary. Why, I don't see myself as requiring that. What I envision myself as saying is, why doesn't the sheriff have to go back to the court and say, you know, I need further, you know, a new order that my continued detention is appropriate, you know, because we can make these hypotheticals up a year, three years, five years, 25 years, you know. Surely at some point the custodian needs to assure himself that what he's doing is compatible with what the court wants. And unless he goes back to the court, the court itself will lack the information. I mean, judges are busy. For all I know, Judge Jacobi wasn't worrying about what was happening to Destiny Hoffman every day. You know, the sheriff's got to come back. And that's not inconsistent with the sheriff's role. No, and it's not inconsistent with the sheriff's role, but I think the evidence establishes in this case that Sheriff Rodden to court have been imposed by state statute or constitution, state statute with regard to the 48 hour rule, state statute with regard to the 72 hour rule, the Supreme Court's decisions in Gerstein and city of Riverside, all established that there is a constitutional obligation to do this. In this case, there is no state statute that requires Sheriff Rodden in this circumstance to inquire as to whether this is constitutional or whether this person needs to go to the court. In fact, there's no case law. And Hernandez versus Sheehan specifically states there's no case law that we're aware of that requires the executive, the sheriff here to challenge the order of the judiciary. But the facts in Hernandez are quite different. I don't disagree with that. I understand that. And I understand that there's no case law that I've found anywhere that says that deals with durations of this long period of time. And I understand that. So, I mean, doesn't that mean that the best you could do would be to say that there's a gross constitutional violation here, but on the clearly established law branch, you know, you would be arguing that your client is still entitled to qualified immunity. Well, we're only dealing with official capacity claims. So we're not, Judge Barker didn't find that we were entitled to summary judgment because we were qualifiedly immune. She found that there was a lack of causation. And if I can, Your Honor, finish this point. I'm sorry. Okay, go ahead. I'm sorry. No, I mean, on the Monell claim, it really seems to me that the policy the sheriff has is to incarcerate people forever without any judicial testing. And that's a troublesome policy to me. I disagree, Your Honor, because there was judicial testing. Every order that came from the court, again, I go back to it, you're requiring him to evaluate the order of the court. He's not a lawyer, just like Knoebel, Snelling, and Siebold aren't lawyers. They're relying on the lawyer, the judge, or the defense counsel, or whoever else is in the staffing team, to protect the due process rights. They're told that the court needs to make a further order. And the people who are incarcerated have no lawyer, have no access to information. You think that it's the pending further order of the court means he can just wait for eternity for that order. That's his policy. That's his Monell policy. He's the top decision maker. I disagree, effectively, Your Honor, because he didn't just not do anything. The record is replete with what he did. These people, one, could have filed habeas corpus petitions. Two, could have filed a pro se motion. This is not a failure to provide access to the court's claim. These people had access to the courts. They could have filed pro se motions. Destiny Hoffman had six letters in her drug court file that came from a court liaison, the in-house mail system, to her drug court case manager. Typically, in a district court case, federal court case, those get filed and become part of the record, the criminal record or the civil case record. They didn't in this case. Mr. O'Connor had 10 in his. There are four other plaintiffs who had documents in their drug court case file that show that there were steps being taken to provide access to these plaintiffs to the courts. This isn't a claim that they were to provide better communication. That's the claim, apparently. But counsel, I want to follow up on what Judge Wood just asked. I agree, and as Judge Barker said below, we can't impose upon sheriffs the responsibility to go back and check whether there were due process violations in the proceedings leading up to the entry of the order. That's beyond, I think, what a sheriff can do. But as Judge Wood is saying, the sheriff's I will accept the facial validity of any order, even if, for example, the order said pending staffing on X date, and then the next order basically said indefinite. So if an order facially says something like, lock this person up for the rest of their life, is there any limit to what a sheriff should inquire or go back to the court and say, this order facially is so open-ended and so outrageous, do I really have the authority to uphold this person? Is that policy okay? At this point, given where our constitutional jurisprudence that I've seen, there's nothing that says that what you're saying is inaccurate. There's nothing I've seen that would impose an obligation on the sheriff to say, I have to go back to the court and say, is this a valid sentence? You don't require sheriffs or wardens of jails to go back to the court and say, this sentence seems heavy to me. That's what you would be requiring. Even if it was a life sentence out of this DTC? Again, Your Honor, you would be requiring a warden or establishing precedent that would establish that a warden who gets a complaint from an inmate saying, my sentence is too long, he has to go now to the court to figure that out. That's not the analogy, though. The analogy is the inmate comes and says, my sentence is completely open-ended. I don't know if it's a day, a month, a year, the rest of my life. I would like clarification. The warden is duty-bound to clarify exactly how long he or she is entitled to hold somebody. I see that my time is up, Your Honor, but to answer your question, I think Sheriff Rodden provided that procedure. I think with the court liaison, the inmates actually used Officer Dodd to find out, to ask questions. What I don't know is the denominator. I know that some people did manage to use this courthouse mail system successfully, but I don't know, was that 90% of the time it was used? Was that 2% of the time it was used? I don't know how many efforts were made and how many went through. I think the record establishes how many were made and I don't think there's anybody, there's no evidence that I'm aware of, from any of the plaintiffs, that said I requested something from Officer Dodd, who was a court liaison, and I didn't get a response back. And most of the time, Officer Dodd's affidavit is that I went to the court or I checked the odyssey system and this is what it said. In fact, with Ms. Hoffman, he went and asked and they said the response that he received from the court and from the case administrator was, don't give up on us, we're not giving up on you. And he provided that to her. Mr. Lowe, is it correct that if somebody's being held in custody on a civil contempt charge that that's an open-ended order? Until the contempt is purged? Yes, Your Honor. Except there's an outer limit that the Supreme Court has recognized because if the contempt isn't purged after, it sticks in my mind, two years, I forget the case. But in fact, the Supreme Court has said, despite the you hold the key to the jail in your own hands character of civil contempt, there comes a time that it simply has to be tested in a different way. So whether we're there or not, I guess we'll see. Thank you. But we thank you very much. Mr. Sturgill, anything further? All right. Well, in that case, thank you very much to all counsel. Um, does either of the judges have any questions for Mr. Sturgill? All right. Apparently not.